NEW YORK & BOSTON RAPID TRANSIT CO. *et al. v.* PARROTT *et al.*

*(Circuit Court, D. Connecticut. October 23, 1888.)*

INJUNCTION—WRONGS PREVENTED—RESCISSION OF CONTRACT.

A contract was entered into between the A. L. Ry. Co. and the T. Co.; in pursuance of which the latter received the controlling interest in the former's stock, and paid certain stock, notes, and money in return therefor to the A. L. stockholders, and assumed the building of its road. The T. Co. failed to build the road within the prescribed time, but no tender of the stock, money, or notes was made by the A. L. Co. At an adjourned annual meeting, which had been kept alive by successive adjournments, and at which no business was anticipated and the T. Co. was not represented, new directors were elected, and the company was, by stratagem on the part of the defendants and by surprise, placed in the hands of non-stockholders, who said that they would pay the debts and build the road. *Held,* that the acts of the defendants were in fraud of the T. Co., and that an injunction should issue to prevent the carrying out of the arrangement.

In Equity. On bill for injunction.

The New York & Boston Rapid Transit Company and William M. Thayer against Henry R. Parrott and F. W. Parrott, 2d.

*Hyde, Gross & Hyde,* and *L. E. Chittenden,* for plaintiffs.

*S. E. Baldwin,* for defendants.

SHIPMAN, J. This is a motion for a preliminary injunction to restrain the defendants from the performance of acts alleged to be fraudulent and prejudicial to the rights of the plaintiffs as owners of a majority of the voting stock of the New York & Connecticut Air-Line Railway Company. The said company is a Connecticut corporation, and was incorporated for the purpose of building a railway from New Haven to the boundary line between the states of New York and Connecticut. The time for the completion of said road will expire on October 22, 1889. This date was established by a resolution of the Connecticut legislature, at its January

session, 1886. On November 12, 1884, Samuel E. Olmstead was the president of said company. He died in 1885. On November 14, 1885, Henry R. Parrott was elected president, and has ever since acted in that capacity. On said November 12, 1884, said Olmstead, Parrott, and Delas E. Culver of the first part, entered into the following written contract with the plaintiff Thayer and one Henry Levis of the second part:

"Whereas, the said parties of the first part control a majority of the subscribed capital stock of the New York & Connecticut Air-Line Railway Company and the said parties of the second part control a majority of the subscribed stock of the New York & Boston Inland Railroad Company, and both of said parties of the first and second parts desire to place the control of said companies in the possession of the New York & Boston Rapid Transit Company, or of some other construction company to be agreed upon. Therefore, the said parties of the first part agree to procure and assign to said construction company at least eighty (80) per cent. of the subscribed stock of the New York & Connecticut Air-Line Railway Company, and shall receive for said stock of said railway company (upon which at least ten (10) per cent. shall have been paid) eighty thousand dollars in cash, ($80,000,) and two hundred thousand dollars at par, ($200,000,) of full-paid stock of said construction company of a capital stock, not exceeding one million five hundred thousand dollars, ($1,500,000;) and the said parties of the second part hereby agree to procure and assign to said construction company at least ninety (90) per cent. of the subscribed stock of the New York & Boston Inland Railroad Company, upon which at least ten (10) per cent. shall have been paid, and shall receive for said railroad company stock so assigned three hundred thousand dollars ($300,000) of the full-paid stock of said construction company. Both of said railway and railroad companies are to be free from debt at the time of the transfer of said stock and control of said railway and railroad companies. The said transfer of stock, payment of money, and delivery of full-paid construction company's stock as aforesaid shall take place on or before January 15, 1885, or this contract shall be null and void, and of no effect."

This written contract was not carried out according to its terms. It was not completed on January 15, 1885. The New York & Boston Transit Company was not organized until January, 1886, at which time the Air-Line Company deemed that it had expended about $200,000 in the construction and other expenses of its road, of which about $120,000 had been paid in upon its stock, and it owed about $80,000. Parrott, acting for and in behalf of the stockholders of the Air-Line Company, verbally agreed with the Rapid Transit Company that it should make good or pay this amount of $200,000 to the stockholders of the Air-Line Company by delivering to them $120,000 full-paid stock of the Transit Company, and $80,000 in cash, with which to pay the debts of the Air-Line Company; that the capital stock of the Transit Company should be $750,000; and that a controlling interest in the stock of the Air-Line Company should be furnished to the Transit Company. These modifications of the written contract were not reduced to writing, but they were verbally understood by the stockholders of the Air-Line Company on the one part and by Mr. Thayer and the Transit Company on the other. The object of the Air-Line stockholders was to have the $80,000 of debts paid, and they were also to have $120,000 full-paid stock in the Transit Company, while the Transit Company was to have the ownership of the

majority of the Air-Line Company's full-paid stock, and its control in return for their $200,000. The existence of the foregoing terms of this mutual agreement and understanding was fully known by the leading stockholders and by all the directors of the Air-Line Company. As a matter of course, the Transit Company was to raise the funds to complete, and was to build the road. This was the object of its organization. It is not probable that any new agreement was entered into that it would build the road, for that was the original purpose and scheme of the parties to the contract. On November 12, 1884, and continuously thereafter to the present time, there were and are 4,511 shares of stock of the Air-Line Company, of which, on December 1, 1885, 200 shares only were full-paid stock, 100 being in the name of H. R. Parrott, and 100 in the name of C. V. Sidell. Upon the rest of the stock various percentages, from 10 to 35 per cent., had been paid, except that upon 45 shares 50 per cent. had been paid. On October 6, 1888, 2,101 shares appear by the stock certificates to have been fully paid. Upon the remaining stock, 300 shares standing in the name of H. C. Hepburn, and 2,110 shares standing in the name of B. B. Kirtland, only 10 per cent. has been paid. For these 2,410 shares no certificates have ever been issued. By the statutes of Connecticut, stock of railroad companies, which is not fully paid, is not entitled to a vote at any stockholders' meeting. Under the contract of November 12, 1884, and its modifications, the Rapid Transit Company or W. M. Thayer, paid to C. V. Sidell, treasurer of the Air-Line Company, at various times between December 12, 1885, and March 13, 1888, the sum of $60,149.47 in money, which amount was received by said Sidell in behalf of the parties whom the said Parrott represents, and for whom he acts. Said Sidell, as treasurer, also received from said Transit Company its demand promissory notes, in different sums, with interest, dated December 1, 1886, in all for the sum of $20,250, to sundry stockholders of the Air-Line Company, the respective amounts of said notes being the amounts due from said company, on December 1, 1886, to said respective stockholders. Fourteen thousand two hundred and fifty dollars of said notes were delivered by said Sidell to said Parrott on July 8, 1887, and by him were delivered to and received by the payees thereof, and all said notes are still outstanding. I do not find that the notes were received in payment and satisfaction of their debts against the Air-Line Company. On or about February 1, 1887, the Transit Company delivered to said Sidell, treasurer, under said contract, and the modification thereof, 2,400 full-paid shares of $50 each of its stock, in certificates of varying amounts, in the names of different Air-Line stockholders, which certificates, with the exception of 3, for 189 shares in all, have been delivered by said Sidell to the parties therein respectively named. Said certificates so delivered were returned by the respective stockholders to Mr. Thayer, to be by him kept with other stock of said Transit Company together, so as to keep the control of the Transit Company in its then existing hands. From time to time stockholders of the Air-Line Company delivered to said Sidell, as treasurer, their certificates of stock in said company, duly assigned in blank,

and with executed powers of attorney for their transfer, for delivery to said Thayer or to the Transit Company under said contract. It is claimed by some of these stockholders, who have given affidavits on the subject, that said certificates were to be held in escrow, and were not to be delivered until said notes and said $80,000 were fully paid, and sufficient proof was given that the road was to be built. There is nothing in evidence in writing in regard to a delivery in escrow, except a letter from said Sidell to said Parrott, dated July 5, 1887, in which he says:

"I wrote Mr. Thayer that we could not pass the control out of our hands until our notes were all paid, and that the agreement, as understood between us, would be carried out by us; namely, to place the control, (full-paid stock,) together with the notes in escrow, and as fast as the notes were paid, or any portion of the same, we would transfer the full-paid stock to his Co. in proportion to the amount paid. If there can be any better plan adopted, very well. Any way to get the matter closed up."

From the subsequent facts I think that it must have been in substance agreed or understood, subsequent to July 5, 1887, that all the stock of the Air-Line Company should not be delivered to Mr. Thayer, but that it should be transferred to his company, or delivered to him in some proportion to the amount which should be paid upon the $80,000, and that a portion of said stock should be retained to enforce or compel the payment of all said notes.

Before July 22, 1887, certificates for 509 shares full-paid stock, duly assigned in blank, and with duly-executed powers of attorney to transfer, had been delivered to said Sidell, as treasurer, and had been by him with the knowledge and assent of said Parrott, delivered to said Thayer under said contract, who held said certificates until September 25, 1888, when he surrendered the same to Thomas N. Browne, who then claimed to be the secretary of said company, and who had the custody of the stock-books, and received new certificates therefor. On July 22, 1887, 900 shares of the stock of said Air-Line Company, 300 of the same belonging to Willliam T. Black, and 600 belonging to Sheldon Collins, having been surrendered, new full-paid certificates for said 900 shares were issued to W M. Thayer, trustee, and are still kept by him. These 900 shares were not full-paid stock when they were surrendered. Sixteen thousand four hundred dollars had been paid thereon, but new full paid certificates were issued therefor. I do not know why such certificates were issued and signed by Messrs. Parrott and Browne. There is some reason to infer that the payments and transfer of stock by the Rapid Transit Company were considered to be credited upon the stock received therefor, and that such stock became full paid. They were issued without any mistake of the facts in relation thereto, and no criticism seems to have been made on account of such issue until this litigation. Certificates for 345 more shares were delivered to said Sidell, as treasurer, under said contract. The certificates of 235 of these shares were assigned in blank, and powers of attorney were duly executed to transfer the same. Of these 345 shares, C. H. Lontrell, John C. Shaw, and C. D. Ingersoll owned 100 each, W. W. Douglass 25, and F. W. Ford and

J. R. Jessup, 10 each. The custody of these certificates continued with said Sidell until September 20, 1888. On said last-mentioned day said Parrott also had the custody of 237 more shares, all duly assigned in blank, which had been placed in his hands or control for delivery to said Thayer under said contract. The names of all the holders of these 237 shares did not appear in the affidavits. On July 13, 1888, said notes had not been paid; and the Air-Line directors, thinking there was no apparent probability of the ability of the Transit Company to build the road, appointed Messrs. Parrott and Cowles a committee under the terms of the following resolution:

"Resolved, that Messrs. H. R. Parrott and George R. Cowles be appointed a special committee, with instructions to proceed to Boston at the earliest' practicable day and lay the subject-matter of the report before the board of directors of the New York & Boston Rapid Transit Company as the sense of this board; and, further, that, unless satisfactory guarantees can be given by the said Rapid Transit Company, expressive of the tenor of said report, all understandings heretofore had between stockholders and officers of both companies shall be considered abrogated, and of no effect."

The concluding part of the report of a committee of the Air-Line directors, to which reference is made in said resolution, is as follows:

"In view of the limited time allowed by law for the construction and completion of the company's road, to-wit, fifteen months from the 1st day of July, 1888, and of the fact that no further extension of time can be had at the hands of the legislature of the state of Connecticut, which convenes in January, 1889, unless a large amount of work by way of construction is done, and an earnest of good faith evinced by this company, your committee would earnestly impress upon the board the necessity of its prompt action herein, and would suggest that, upon the said Rapid Transit Company's paying the sums due on the purchase of stock from the stockholders of the company prior to the 1st day of August, 1888, and commence and diligently prosecute the work of construction on the line of this company's road prior to said 1st day of August, 1888, and expend thereon in cash a sufficient sum to warrant this company in asking for a further extension of time from the general assembly, this company should enter into and execute an agreement with the Rapid Transit Company, fully setting out the obligations of both companies.".

In order to obtain an extension of time, from the legislature of 1889, for the building of the road, it is probably important that the promoters of the enterprise should exhibit substantial financial ability, and a determination to build the road, and should have commenced the enterprise in a substantial and *bona fide* manner. Said committee went to Boston on July 24th. The vice-president of the Transit Company said that company could not then pay the notes due the Air-Line stockholders. The committee then made to the president and other gentlemen representing the Transit Company the two following propositions: (1) That they would return all the Rapid Transit stock and notes and money received by the stockholders of said Air-Line Company upon the said Transit Company's returning the stock which it held; or (2) it might keep said stock, and have all the remaining full-paid stock by paying the money which it had cost, and the debts of the Air-Line Company, and that said Air-Line Company's stockholders would give up their claims to

the Rapid Transit stock, which had been transferred to them.     The gentlemen representing the Transit Company said that they were unable to accept either proposition.     Nothing more was ever done under these propositions.     No money or stock of the Transit Company was tendered or offered by the Air-Line Company.  The Transit Company desired a delay of one month, and the committee agreed to favor delay till September 1st.     On August 21st, said Parrott went to Boston again, but could not obtain either money or prospect of money.     Before September 19th said Parrott had found some person or persons whom he deemed financially responsible, and who said that, if they were put in immediate control of the company, they would pay its debts, and would build the road. They did not propose to pay anything more for the control or to buy the stock.     On September 14th a meeting of the directors of the Air-Line Company was called to be held on September 19th, at room 500 of No. 146 Broadway, the office of the secretary.     The meeting was not held in that room, but a meeting of directors assembled in Mr. Sidell's office, in another room of the same building, at which Mr. Parrott made a report of his interviews with the Transit Company, and informed them of. the proposal of the other party, whose name or names were not disclosed in the affidavits.     The majority of those present at this discussion favored the new project of giving the new parties the immediate control of the company, and authorized the treasurer to issue demand interest notes, in all for $19,100, dated December 1, 1886, to named stockholders of the company, for the amount of the debts of said company to said stockholders, being the same persons to whom the Transit Company had issued notes.     At this meeting Mr. Parrott said that there were 582 shares of stock which had not been delivered to Mr. Thayer, and which should be returned, and he thought that the fairest way would be to divide these shares *pro rata* among all the stockholders who had taken Rapid Transit stock, which would give for every $1,000 of Transit stock about $400 of full-paid Air-Line stock.     The directors present assented to these suggestions, and on September 20th Mr. Parrott took from the company's office the certificates for 582 shares for cancellation, and directed that other certificates for 582 shares should be made out to sundry stockholders, in general pursuance of the 40 per cent dividend plan.     They were so made, and Mr. Parrott took them from the office to sign them.     Seven certificates, for one share each, were made out in the names, respectively, of J. Walsh, J. W. Lessells, F. W. West, C. L. Seabury, Henry Kinsler, B. F. Cash, and H. Jansen, who were to represent in the new board the new controlling power.     These persons had not previously been stockholders. No annual election of directors had been held since November 27, 1883. The by-laws provided that the annual meeting should be held on the third Friday of October in each year.     An annual meeting was called to be held on that day in 1887, but at the wish of the Transit Company no directors were elected, and the annual meeting was kept alive by adjournment from month to month, only two persons being present.     There had been no purpose or plan to elect directors at any of these various adjourned meetings.     The last adjournment was, as is now apparently shown on

the record, to September 21, 1888. On September 20th Mr. Parrott stated to Mr. Browne, the secretary, that he could not close the negotiations unless a new board was elected on September 21st. At this meeting a new board was declared to be chosen, consisting of the seven persons whose names have been given, and Messrs. Parrott, Cowles, Lockwood, Winton, Coolidge, and F. W. Parrott, 2d, each of the last-named being former directors, except F. W Parrott, 2d. Messrs. Lockwood, Winton, Cowles, and Coolidge resigned on the next day. In the place of Messrs. Lockwood and Winton Messrs. Armstrong and Baldwin were chosen, who have each declined to accept. Mr. B. F. Cash was appointed secretary and treasurer. Mr. Parrott did not inform Mr. Thayer, whom he saw in New York on the 20th, of the proposed election of a new board. Messrs. Sidell and Browne did not attend the meeting. Eight hundred and thirty-three shares were apparently represented at the meeting, of which 100 belonged to Mr. Parrott, and 5 belonged Mr. Parrott, 2d. To whom the remaining shares belonged, or in whose names they stood, did not appear.

It thus appears that, under a contract which was kept in existence and recognized by Mr. Parrott until a very recent period, the plaintiffs delivered into the control of the parties whom he represents, $120,000 of fully-paid stock, about $60,000 in money and $20,000 in notes. The notes are unpaid, and the plaintiffs are apparently now unable to pay them, or to pay the debts which these notes represent, and there seems to be no present probability that they can build the road. Mr. Parrott, without returning or offering in any manner which can be considered a tender of the property which was received from the plaintiffs, determined to consider the contract at an end, and to deliver the control of the company into the hands of other persons not stockholders, upon their promise to pay the debts of the company, and to build the road. The delivery of the company into the hands of the new parties was accomplished by an election which was held under the form of law, but was none the less accomplished by stratagem and a surprise upon the plaintiffs. An election of directors was not and could not with reason have been anticipated by them to be held on September 21st. The previous adjournments were in pursuance of the plan, which had been theretofore adopted, of not electing a board, but of awaiting the directions of the Transit Company in that regard, which was recognized as having rightfully the controlling power and voice in the election of directors. Of the 2,101 voting shares it had, in the name of William M. Thayer, trustee, 900, and it had the certificates for 509 which could at any time rightfully have been placed in the name of Mr. Thayer or the Transit Company. The Transit Company had been apparently conceded to be the owners of a large majority of the voting stock, and to be entitled to the 582 outstanding shares in the hands of Sidell and Parrott whenever said notes were paid. This private delivery of the corporation into the control of non-stockholders, while Mr. Parrott and his associates retained all the money which had been delivered to them, was in fraudulent violation of the plaintiffs' rights. The plaintiffs' bill is framed upon the theory that the

contract of November 12, 1884, had been executed; that Parrott and his co-directors were holding over as directors merely in the interest and for the benefit of the plaintiffs, who were substantially the owners of the stock of the Air-Line Company; and that the action of Parrott was a fraudulent violation of the contract, and an intentional sacrifice of the rights of the plaintiffs, which could not be compensated in damages, for which an action at law afforded no adequate remedy, and the injurious effect of which could only be prevented by injunction. The bill was not intended to be a bill for specific performance. I do not find that the contract was an executed one, because I do not think that the unpaid notes were accepted in payment of the claims against the Air-Line Company; but I find that the plaintiffs had substantial pecuniary interest and ownership in said company, which the defendants wrongfully attempted to impair, and that from the further commission of like acts they should be restrained until a thorough and complete investigation shows either that I have been misled by affidavits, or that events which may hereafter take place have altered the present position of the parties. Let a temporary injunction issue against H. R. Parrott and F. W. Parrott, 2d, enjoining and restraining them, and each of them, from making any agreement or contract, or executing any document, or doing any other act or thing, either as directors, agents, or officers of said New York & Connecticut Air-Line Railway Company, or individually, which in any manner interferes with, affects, influences, or touches the interests of said plaintiffs, or of either of them, until the further order of the court in the premises.